UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


SHELIA BUTLER

                                        CIVIL ACTION

VERSUS

                                        NUMBER 07-723-SCR

THE  LOUISIANA  DEPARTMENT  OF
HEALTH AND HOSPITALS, ET AL


### RULING ON MOTION FOR SUMMARY JUDGMENT

Before the court is a Motion for Summary Judgement filed by defendants the State of Louisiana, Department of Health and Hospitals and Charles Methvien.  Record document number 38.  The motion is opposed.[1]

Based on the applicable law and an analysis of the summary judgment evidence, for the reasons which follow the defendants' motion for summary judgment is granted.


**Background**

Plaintiff Shelia Butler filed this action against the State of Louisiana, Department of Health and Hospitals, and her supervisor Charles Methvien, alleging employment discrimination and retaliation under federal and state law.  Plaintiff's state court

---

[1] Record document number 41.  Defendants filed a reply memorandum.  Record document number 46.  Each side also filed supplemental memoranda addressing the recent Supreme Court decision that clarified the proper causation standard for the federal Age Discrimination in Employment Act (ADEA).  Record document numbers 49 and 50.

Petition[2] and her Amended and Supplemented Complaint[3] asserted claims of sex and race discrimination under Title VII and the Louisiana Employment Discrimination Law (LEDL),[4] race discrimination under 42 U.S.C. § 1981, age discrimination under the ADEA and the LEDL,[5] and retaliation under Title VII, the ADEA, the LEDL and the Family and Medical Leave Act (FMLA).[6]  Plaintiff's Petition indicated that the plaintiff was also asserting state law tort claims for defamation and intentional infliction of emotional distress.[7]

Defendants moved for summary judgment and dismissal of all claims alleged by the plaintiff.  Defendants arguments in support of their motion for summary judgment are summarized as follows:

- Plaintiff failed to properly assert her § 1981 claim under 42 U.S.C. § 1983.

- Plaintiff's Title VII (sex and race) and § 1981 (race) discrimination claims are barred by res judicata and

---

[2] Plaintiff filed suit in state court, which the defendants removed to this court.  Her state court suit will be referred to hereafter as her Petition.

[3] Record document number 19.  Plaintiff's Amended and Supplemented Complaint will be referred to hereafter as her Amended Complaint.

[4] 42 U.S.C. § 2000e-2; LSA-R.S. 23:332(A).

[5] 29 U.S.C. § 623(a); LSA-R.S. 23:312(A).

[6] 29 U.S.C. § 2615(a).

[7] Record document number 1-1, Petition, ¶¶ 6, 11 and 16.

collateral estoppel, and by the doctrine of *Rooker-Feldman*.

- Plaintiff's discrimination claims based on sex, race, age and retaliation fail because there is no evidence to dispute the legitimate, nondiscriminatory reasons for the defendant's employment actions, nor evidence sufficient to support a reasonable inference that any adverse employment actions were taken because of these prohibited motives.

- Plaintiff's hostile work environment claim fails because there is no evidence to show that the alleged harassment was based on gender, race or age, and the evidence is insufficient to establish that the conduct alleged was so severe or pervasive that it altered the terms and conditions of the plaintiff's employment.

- Plaintiff has no evidence to support key elements of the state law tort claims of defamation and intentional infliction of emotional distress.

In a reply memorandum the defendants raised two additional arguments:

- Plaintiff's claims under Title VII and the ADEA based on conduct that occurred before February 2002 are time barred.

- The law of the case doctrine prevents the plaintiff from

3

now contesting facts decided by the state appellate court that reviewed the Civil Service Commission decision in her case.

In support of their motion the defendants submitted a statement of uncontested facts,[8] excerpts from the plaintiff's deposition,[9] a copy of the Louisiana Civil Service Commission decision dated April 21, 2003,[10] a copy of Louisiana Civil Service Commission decision dated June 17, 2002,[11] a copy of the cover sheet for the plaintiff's appeal to the Civil Service Commission,[12] a copy of the transcript of the plaintiff's February 4, 2003 hearing on her Civil Service Appeal,[13] a copy of the Louisiana Civil Service Commission decision dated April 21, 2003, along with a copy of the decision of the Louisiana First Circuit Court of Appeal ruling affirming the decision,[14] copies of documents related to sanitarian training,[15] a copy of the job description for the position of

---

[8] Record document number 36-5.

[9] Defendants Exhibit 1.

[10] Defendants Exhibit 2.

[11] Defendants Exhibit 3.

[12] Defendants Exhibit 4.

[13] Defendants Exhibit 5 (hereafter, Hearing transcript).

[14] Defendants Exhibit 6.

[15] Defendants Exhibit 7.

4

Sanitarian 3,[16] and a copy of Methvien's June 14, 2001 directive to the plaintiff regarding use of her personal vehicle for transporting co-employees for training and other purposes.[17]

Plaintiff opposed summary judgment on all of the grounds urged by the defendants, and essentially argued that the evidence demonstrates a genuine dispute for trial on the sex, race, age and retaliation claims alleged under federal and state law. In opposition, the plaintiff relied on a statement of disputed material facts,[18] excerpts from her deposition,[19] copy of a page from the Department of Health and Hospitals Employee Handbook,[20] and copies of decisions regarding her unemployment benefit application and the application of Bobbie J. Smith, another sanitarian who was terminated.[21]

Plaintiff also submitted copies of her handwritten notes dated from July 9, 1999 to October 7, 2002.[22] Defendants asserted that this evidence must be disregard because it is hearsay. A review of the exhibits supports the defendants' argument. The exhibits are

---

[16] Defendants Exhibit 8.

[17] Defendants Exhibit 9.

[18] Record document number 41-2.

[19] Plaintiff Exhibit 1.

[20] Plaintiff Exhibit 2.

[21] Plaintiff Exhibits 5 and 6.

[22] Plaintiff Exhibits 3 and 4.

not competent summary judgment evidence and cannot be considered in evaluating whether there is a genuine dispute for trial.[23]

## Summary Judgment Standard and Applicable Law

Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law.  Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986).  If the moving party carries its burden under Rule 56(c), the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to verdict in its favor.  *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.  This burden is not satisfied by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  In resolving the motion the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor.  *Anderson*, 477 U.S. at 255, 106

---

[23] Unsworn documents/statements, hearsay evidence, and other evidence excludable at trial are not competent summary judgment evidence.  *Fowler*, *supra*; *Martin*, *supra*.

S.Ct. at 2513.   The court may not make credibility findings, weigh the evidence, or resolve factual disputes.   *Id.; Reeves v. Sanderson Plumbing Prods., Inc.*,   530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000).   On summary judgment, evidence may only be considered to the extent not based on hearsay or other information excludable at trial.   *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

The applicable substantive law dictates which facts are material. *Canady v. Bossier Parish School Bd.*, 240 F.3d 437, 439 (5th Cir. 2001).   In this case the court must apply the law applicable to claims brought under § 1981, Title VII, the ADEA, the FMLA and the LEDL.


**Section 1981**

Section 1981 provides in pertinent part:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens....

In *Jett v. Dallas Independent School District*, the Supreme Court held that Congress intended 42 U.S.C. § 1983 to be the sole remedy for discrimination by persons acting under color of state law. *Jett v. Dallas Independent School District*, 491 U.S. 701, 109 S.Ct. 2702 (1989).   The court reasoned that because § 1983 provided

7

a remedy against persons acting under color of state law, a cause of action under § 1981 could not be implied independent of § 1983. *Oden v. Oktibbeha County, Miss*., 246 F.3d 458, 463 (5th Cir. 2001). The Court did not make a distinction between state entities and individuals acting pursuant to color of state law.  Therefore, if a plaintiff is seeking to hold either liable in damages for violation of § 1981 rights, such claims must be pursued under the remedial provisions of § 1983.  *Felton v. Polles*, 315 F.3d 470, 482 (5th Cir. 2002).  The passage of § 1981(c) in 1991 did not affect the holding of *Jett*. *Oden*, 246 F.3d at 463-64.


### *Rooker-Feldman* Doctrine

In *Exxon Mobil v. Saudi Basic Industries,*[24] the Supreme Court reviewed the origins of the *Rooker-Feldman* doctrine.[25]  The Court stated that *Rooker* was a suit commenced in a federal district court to have a judgment of a state court, which was adverse to the federal court plaintiffs, declared null and void.[26]  With regard to *Feldman*, the Court explained that the parties had filed a federal court action against the very court that had rejected their bar

---

[24] *Exxon Mobil Corp. v. Saudi Basic Industries*, 544 U.S. 284, 125 S.Ct. 1517 (2005).

[25] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303 (1983).

[26] *Exxon Mobil*, 544 U.S. at 284, 125 S.Ct. at 1521.

applications, and sought reversal of that court's denial of their petitions for waiver.  The Court noted that in both *Rooker* and *Feldman* the losing party in state court filed suit in federal court after the state proceedings ended, "complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment," and called on the district court to "overturn an injurious state-court judgment."  The Court finally concluded:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

*Exxon Mobil*, 544 U.S. at 284, 125 S.Ct. at 1522.

### Preclusion Under 28 U.S.C. § 1738

Section 1738, contains the "full faith and credit" clause, which mandates that federal courts give the same preclusive effect to state court judgments as those judgments would be given in the courts of the state from which the judgments came.  *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 102 S.Ct. 1883 (1982).  In *Kremer* the Supreme Court examined the relationship between Title VII and § 1738.  The Court held that Congress did not intend Title VII to repeal § 1738's requirement that federal courts give full faith and credit to state court judgments.  Therefore, where state administrative proceedings are held, the administrative decision is appealed to the appropriate state court and the judicial

proceedings culminate in a final judgment, the court must determine whether the law of the state in which the prior judgment is rendered would give that judgment preclusive effect against the claims asserted in the federal action, and whether the party against whom preclusion is asserted had a full and fair opportunity in the state proceeding to pursue his claims. *Id.*, 456 U.S. at 481-82, 102 S.Ct. at 1897-98; *Hughes v. Arveson*, 924 F.Supp. 735, 737 (M.D. La. 1996).

When a federal court is asked to give res judicata effect to a state court judgment, the federal court must determine the preclusive effect of that state court judgment under the res judicata principles of the state from which the judgment originates. *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996).

Louisiana res judicata law is embodied in LSA-R.S. 13:4231:

Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:

(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.

(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

In *Chevron USA, Inc. v. State*, 07-2469 (La.9/08/08), 993 So.2d 187, the Louisiana Supreme Court examined the doctrine of res judicata and stated:

> Based on the language of the above statute [LSA-R.S. 13:4231], this court has established the following five elements that must be satisfied for a finding that a second action is precluded by res judicata: "(1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation." *Burguieres v. Pollingue*, 02-1385, p. 7 (La.2/25/03), 843 So.2d 1049, 1053. Since the 1990 amendment to the res judicata statute, this court considers the "chief inquiry" to be "whether the second action asserts a cause of action which arises out of the transaction or occurrence that was the subject matter of the first action." *Id.*

*Id.*, p. 10, 993 So.2d at 194; *Insurance Co. of North America v. Louisiana Power & Light Company*, 2008-1315 (La.App. 4 Cir. 3/4/09), 10 So.3d 264, 268.

In Louisiana, both claim preclusion and issue preclusion are included under the term "res judicata". *Rushing v. Board of Sup'rs of University of Louisiana System,* 2008 WL 4200292, 3 (M.D.La. Sept. 11, 2008). Issue preclusion requires (a) a final judgment, (b) identity of the parties, (c) actual litigation of an issue, (d) judicial determination of that issue, and (e) that the judicial

11

determination of the issue must have been essential to the disposition of the claim in the prior action.   *Id*.


### Hostile Work Environment

Plaintiff may establish a violation of § 1981, Title VII and Louisiana's anti-discrimination law by proving that the workplace is permeated with discriminatory intimidation, ridicule and insult that is so severe or pervasive that it alters the conditions of employment and creates a hostile or abusive working environment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 370 (1993); *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298-99 (5th Cir. 2001).  In order to establish a claim that discrimination has created an abusive or hostile working environment, a plaintiff must prove the following four elements in cases where it is asserted that a supervisor with immediate or successively higher authority perpetrated the harassment: (1) that she belongs to a protected class; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based on a prohibited ground, i.e., race, gender, and (4) that the harassment affected a term, condition, or privilege of employment.  *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999);[27] *Woods*, *supra*, n. 2.  If the alleged harassment is committed by a co-worker rather than a

---

[27] *Citing*, *Burlington Ind. V. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275 (1998).

supervisor, the plaintiff must also prove a fifth element - that her employer knew or should have known of the harassment and failed to take prompt remedial action. *Watts*, *supra*, n. 3; *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 325 (5th Cir. 2004).[28]

For harassment to affect a term, condition or privilege of employment it must be both objectively and subjectively severe or pervasive, i.e., the work environment must be one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. *Lauderdale v. Texas Dept. of Criminal Justice, Inst. Div.*, 512 F.3d 157, 163 (5th Cir. 2007). Whether a working environment is objectively hostile or abusive is determined by considering the totality of the circumstances. Courts look to: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating as opposed to a mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance, and (5) whether the conduct undermines the plaintiff's workplace competence. *Hockman*, 407 F.3d at 325-26; *Harris*, 510 U.S. at 23, 114 S.Ct. at 371.

Not all harassment will affect the terms, conditions, or privileges of employment. The mere utterance of an offensive comment or remark which hurts an employee's feelings is not sufficient to affect the conditions of employment. Simple teasing,

---

[28] *Citing*, *Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th Cir. 1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 952 (1987).

offhand comments, and isolated incidents, unless they are extremely serious, are not sufficient to affect the terms, conditions or privileges of employment.  *Lauderdale*, *supra*; *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405 (1986).

### Age Discrimination

The *McDonnell Douglas*[29] framework is applied to consideration of disparate treatment claims brought under the ADEA and the LEDL.[30] To establish a prima facie case a plaintiff must demonstrate that she is:  (1) a member of a protected class; (2) qualified for the position, (3) suffered an adverse employment action, and that (4) she was either (I) replaced by someone outside of the protected class, (ii) replaced by someone younger, (iii) treated less favorably than similarly situated younger workers, or (iv)

---

[29] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).  In recent decisions, without definitively deciding, the Supreme Court has assumed the application of the *McDonnell Douglas* framework in ADEA cases and applied the prima facie case, burden-shifting analysis.  *See*, *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097 (2000); *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311, 116 S.Ct. 1307 (1996); *Gross v. FBL Financial Services, Inc.*, ___ S.Ct. ___, 129 S.Ct. 2343, 2349, n. 2 (2009).  The Fifth Circuit does the same and assumes the application of the framework and applies it in ADEA cases.  *See*, *Warren v. City of Tupelo Mississippi*, 2009 WL 1560022 (5th Cir. June 3, 2009); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004); *Smith v. City of Jackson, Mississippi*, 351 F.3d 183, 196 (5th Cir. 2003).

[30] State law age discrimination claims are decided by the same principles that govern ADEA claims.  *Hasty v. Lockheed Martin Corp.*, 252 F.3d 1357 (5th Cir. 2001).

otherwise discharged because of her age.  *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 575-76 (5th Cir. 2003).

A plaintiff's prima facie case creates an inference of discrimination that shifts the burden of production to the defendant to come forward with evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason.  The burden is one of production, not persuasion, and "can involve no credibility assessment."  *Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106, *citing*, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 2748 (1993); *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000).

Once the employer articulates a legitimate nondiscriminatory reason and produces competent summary judgment evidence in support of it, the inference created by the prima facie case drops out of the picture.  *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 222 (5th Cir. 2000).  The *McDonnell Douglas* framework with its presumptions and burdens disappears, and the only remaining issue is discrimination vel non.  The fact finder must decide the ultimate question of whether the plaintiff has proven intentional discrimination.  *Id.; Reeves*, *supra*.

A plaintiff may attempt to establish that she was the victim of intentional discrimination by offering evidence that the employer's legitimate nondiscriminatory reason is unworthy of belief.  The trier of fact may also consider the evidence

establishing the plaintiff's prima facie case and inferences properly drawn from it, on the issue of whether the defendant's explanation is pretextual. *Reeves*, *supra*; *Russell*, 235 F.3d at 222-23. Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves*, 120 S.Ct. at 2108-09; *Russell*, 235 F.3d at 223.

Whether summary judgment is appropriate in any particular case will depend on a number of factors including the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence relevant to the employer's motive. *Reeves*, 120 S.Ct. at 2109; *Crawford*, 234 F.3d at 902. The ultimate determination in every case is whether, viewing the evidence in the light most favorable to the plaintiff, a reasonable fact finder could infer discrimination. *Crawford*, *supra*.

The Supreme Court's 2009 decision *in Gross v. FBL Financial*, held that in any ADEA disparate treatment case, the plaintiff has the ultimate burden of proving by a preponderance of the evidence, which may be direct or circumstantial, that age was the "but-for" cause of the challenged adverse employment action. *Gross*, 129 S.Ct. at 2351-52.

16

**Retaliation Under Title VII, ADEA, LEDL and FMLA**

A plaintiff establishes a prima facie case for unlawful retaliation under Title VII, 42 U.S.C. § 2000e-3, the ADEA, 29 U.S.C. § 623(d), or the LEDL by proving: (1) that she engaged in activity protected by the statute,[31] (2) that an adverse employment action occurred,[32] and (3) that a causal connection exists between the protected activity and the adverse employment action. *Lemaire v. State of Louisiana*, 480 F.3d 383, 388 (5th Cir. 2007); *Holt v.*

---

[31] An employee has engaged in activity protected under Title VII's anti-retaliation provision if she has (1) opposed any practice made an unlawful employment practice by Title VII, or (2) made a charge, testified, assisted, or participated in any manner in a Title VII investigation, proceeding, or hearing. *Grimes*, 102 F.3d at 140. The opposition clause requires the employee to show that he had at least a reasonable belief that the practices he opposed were unlawful. *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). However, proof of an actual unlawful employment practice is not required to state a claim for unlawful retaliation. *Id.*, at 309, n.10, *citing*, *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1137-41 (5th Cir. 1981). These same principles apply to ADEA and LEDL retaliation, which mirror Title VII's provision. 29 U.S.C. § 623(d); LSA-R.S. 23:312(D); *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998).

[32] Title VII's retaliation provision is not limited to actions and harms that relate to employment or occur at the workplace. It covers employer actions materially adverse to a reasonable employee, that is, actions that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 67, 126 S.Ct. 2405, 2415 (2006). *Burlington* overruled Fifth Circuit precedent which limited actionable Title VII retaliatory conduct to ultimate employment decisions. *Burlington*, 126 S.Ct. at 2410. Because the ADEA and LEDL retaliation statutes are not materially different from Title VII's provision, the *Burlington Northern* standard is applied to all three retaliation claims. *See, Johnson v. McGraw-Hill Companies*, 451 F.Supp.2d 681, 710 (W.D.Pa. 2006).

*JTM Industries, Inc.*, 89 F.3d 1224, 1225-26 (5th Cir. 1996).  The causal link required by the third prong of the prima facie case does not have to meet a "but for" standard.  A plaintiff does not have to prove that her protected activity was the sole factor motivating the employer's challenged actions in order to establish the causal link element of a prima facie case.  *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).

If the plaintiff establishes a prima facie case of retaliation, the defendant must come forward with a legitimate, nonretaliatory reason for its adverse employment action.  Once the defendant advances its reason, the focus becomes the ultimate issue in a retaliation case, which is whether the employer retaliated against the employee for engaging in protected activity.  Plaintiff is required to prove that the adverse employment action would not have occurred "but for" the protected activity.  *Vadie v. Mississippi State University*, 218 F.3d 365, 374 (5th Cir. 2000); *Septimus* v. *University of Houston*, 399 F.3d 601, 608-09 (5th Cir. 2005).  "Whether or not there were other reasons for the employer's actions, the employee will prevail only by proving that "but for" the protected activity she would not have been subjected to the action of which she claims."  *Jack v. Texaco Research Center*, 743 F.2d 1129, 1131 (5th Cir. 1984).  Although not in itself conclusive, the timing of an employer's actions can be a significant factor in the court's analysis of a retaliation claim.

*Gee*, 289 F.3d at n.3, *citing*, *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992).

Under the FMLA it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the act.  29 U.S.C. § 2615(a)(1).  Thus, the FMLA prohibits employers from interfering with an employee's leave and protects employees from discrimination and retaliation for exercising their rights under the act.  *Bocalbos v. National Western Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998), *cert. denied*, 528 U.S. 872, 120 S.Ct. 175 (1999).

To make a prima facie case of discrimination or retaliation under the FMLA, the plaintiff must show that: (1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and (3) either that she was treated less favorably than an employee who had not requested leave under the FMLA, or that the adverse decision was made because she took FMLA leave.  *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 768 (5th Cir. 2002).  If the plaintiff succeeds in establishing a prima facie case, the burden is on the defendant to articulate a legitimate, nondiscriminatory or nonretaliatory reason for the employment action.  Once the defendant presents evidence of its reasons the plaintiff must show by a preponderance of the evidence either that the defendant's explanation is a pretext for discrimination or retaliation, or that the defendant's reason, while true, is only

one of the reasons for its conduct, and another motivating factor is the plaintiff's protected activity.  *Id.; Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 334 (5th Cir. 2005).

## <u>Analysis</u>

### Section 1981 Claim

Relying on *Jett v. Dallas Independent School District* and recent Fifth Circuit cases, the defendants argued that the plaintiff's § 1981 claim fails as a matter of law because the plaintiff did not assert her § 1981 claim under § 1983.  In her opposition the plaintiff relied on a Ninth Circuit Court of Appeals case and various district court decisions from other circuits.  These court have concluded that the 1991 amendments to § 1981 overruled *Jett* and contain an implied direct cause of action against state actors.

Plaintiff's argument is unpersuasive.  The Fifth Circuit has clearly expressed its opinion regarding the continuing validity of *Jett* after the 1991 amendment which added subsection (c) to § 1981.[33]  *Oden*, *supra; Felton*, *supra*.  The court confirmed *Jett's* continuing validity.  That determination is controlling.  It is unnecessary to discuss or analyze the decisions cited by the plaintiff.  It is sufficient to state that the plaintiff's Petition

---

[33] This subsection provides that the rights protected by § 1981 "are protected against impairment by nongovernmental discrimination and impairment under color of State law."  42 U.S.C. § 1981(c).

20

and Amended Complaint only allege that the defendants' actions violated § 1981.[34]  Section 1983 is not cited in either pleading.[35]  Nor did the plaintiff allege or indicate in any way that her § 1981 claim is brought pursuant to § 1983.  Therefore, the defendants are entitled to summary judgment as to the plaintiff's race discrimination claims brought under § 1981.[36]

### *Rooker-Feldman* and Preclusion Under LSA-R.S. 13:4231

Based on the undisputed facts regarding the plaintiff's appeal of her termination in state court, the defendants argued that the *Rooker-Feldman* doctrine prevents this court from exercising jurisdiction over the plaintiff's claims of sex and race discrimination.[37]

Recent Supreme Court decisions which have clarified and emphasized the narrowness of the *Rooker-Feldman* doctrine do not support the defendants' position that the plaintiff's sex and race

---

[34] Petition, ¶ 17; Record document number 19, Amended Complaint, ¶ 19.

[35] Plaintiff did not dispute that her pleadings did not cite or allege § 1983 as a basis for relief.

[36] Given this conclusion it is unnecessary to address the defendants' alternative arguments with regard to the plaintiff's § 1981 claim.  Record document number 38-3, p. 18.

[37] Based on *Rooker-Feldman* and res judicata, the defendants only argued for dismissal of the race and sex discrimination claims, since under LSA-Const. Art. 10, § 8(B), appeals to the Civil Service Commission for discrimination are limited to discrimination based on political, religious beliefs, sex or race.

discrimination claims lie outside this court's jurisdiction.

> In *Exxon Mobil,* decided last Term, we warned that the
> lower courts have at times extended *Rooker-Feldman* far
> beyond the contours of the *Rooker* and *Feldman* cases,
> overriding Congress' conferral of federal-court
> jurisdiction concurrent with jurisdiction exercises by
> state courts, and superseding the ordinary application of
> preclusion law pursuant to 28 U.S.C. § 1738. (internal
> quotation omitted).

*Lance v. Dennis*, 546 U.S. 459, 464, 126 S.Ct. 1198, 1201 (2006).

In *Exxon Mobil* the Supreme Court reviewed the origins of the

doctrine, and specifically held that doctrine was limited to cases

of the kind from which the doctrine acquired its name. *Exxon

Mobil*, 544 U.S. at 284, 125 S.Ct. at 1522. The Supreme Court

further articulated specific circumstances which it stated would

amount to an expansion and improper application of the *Rooker-

Feldman* doctrine. The Court did so by specifically rejecting the

defendant's argument that *Rooker-Feldman* would be a jurisdictional

bar to federal actions that simply raise claims that have

previously been litigated in state court. *Id.*, 544 U.S. at 288, n.

2, 125 S.Ct. at 1524, n. 2. Emphasizing this point later in its

opinion, the Court stated that the statute on which the *Rooker-

Feldman* doctrine is based, 28 U.S.C. § 1257, does not stop a

district court from exercising subject-matter jurisdiction simply

because a party attempts to litigate in federal court a matter

previously litigated in state court. If a federal plaintiff

presents an independent claim, "albeit one that denies a legal

conclusion that a state court has reached in a case to which he was

a party," then the federal court has jurisdiction, and under § 1738 the state law determines whether the defendant prevails under preclusion principles. *Id.*, 544 U.S. at 293, 125 S.Ct. at 1527.

A review of the undisputed facts related to the plaintiff's hearing and decision before the Civil Service Commission and the decision of the Louisiana First Circuit Court of Appeal demonstrate that the sex and race discrimination claims brought by the plaintiff in this federal action merely raise claims that the plaintiff has previously litigated in state court. This is not a situation of the kind presented in *Rooker* or *Feldman*, to which the Court limited the doctrine in *Exxon Mobil*. Plaintiff's race and sex discrimination claims do not assert injuries caused by the state-court judgment and seek federal court review and reversal of that judgment.[38] Therefore, the defendants' argument that the plaintiff's race and sex discrimination claims under Title VII are outside this court's jurisdiction based on the *Rooker-Feldman* doctrine is without merit.[39]

─────────────────

[38] *See*, *Akuna Matata Investments, Ltd. v. Texas Nom Limited Partnership,* 2006 WL 485149 (W.D.Tex. Jan. 13, 2006)(Supreme Court recently made clear that *Rooker-Feldman* applies only under narrow circumstances where plaintiff's complaint attacks the state court judgment itself as illegally causing an injury to the plaintiff; the Court has expressly stated that the district court does not lack jurisdiction based on *Rooker-Feldman* when plaintiff attempts to relitigate claims previously brought in state court).

[39] Defendants also advanced their *Rooker-Feldman*, res judicata, and collateral estoppel arguments as to the plaintiff's § 1981 race discrimination claim. Because the plaintiff failed to properly
(continued...)

Nevertheless, the defendants have established that the application of the principles of Louisiana res judicata under LSA-R.S. 13:4231 bar the plaintiff's sex and race discrimination claims.  Plaintiff's arguments to the contrary are unconvincing.

Plaintiff argued that the Fifth Circuit's decisions in *Frazier v. King*, 873 F.2d 820 (5th Cir. 1989), and *Garner v. Giarrusso*, 571 F.2d 1330 (5th Cir. 1978), support the argument that her sex and race discrimination claims are not precluded because she exhausted her remedies before the Civil Service Commission.

Plaintiff's argument ignores the critical fact that the First Circuit Court of Appeal affirmed the Civil Service Commission's findings and issued a judgment on May 14, 2004.  Furthermore, the decisions in *Frazier* and *Garner* are not controlling or persuasive based on the facts of this case.  *Frazier* involved First and Fourteenth Amendment retaliation claims asserted under § 1983 and an unreviewed state administrative proceeding.  Plaintiff in *Frazier* appealed the termination to the Louisiana Civil Service Commission, but did not appeal the Commission's decision to a state court.  The court held that under federal law state administrative proceedings, unlike judicial actions, did not have preclusive effect.  *Garner* did involve a claim of race discrimination under

---

[39](...continued)
assert her claim under § 1981, these arguments need only be addressed with regard to the Title VII claims for race and sex discrimination.

Title VII and § 1981, and as in *Frazier* the defendant argued preclusion theories based on an unreviewed administrative determination by a state agency.  The *Garner* court also rejected the application of res judicata and collateral estoppel, noting that the scope of the administrative hearing was much narrower than the plaintiff's lawsuit and that the hearing was not a competent forum to resolve the federal employment discrimination claims.

In this case the decision of the state administrative agency, the Civil Service Commission, was judicially reviewed, an opinion was issued and a judgment was rendered by the appellate court.[40] The preclusive effect of this judgment must be determined in accordance with § 1738, which in turn requires the application of Louisiana principles of res judicata under LSA-R.S. 13:4231.

Other than opposing the defendants' position based on legal arguments and citing *Frazier* and *Gardner*, the plaintiff has nothing to dispute the defendants' argument that the requirements of Louisiana law are satisfied.[41] Plaintiff did not dispute that: (1) she specifically argued before the Civil Service Commission that there was no valid cause for her dismissal and that the

---

[40] Record document number 38-2, defendants Statement of Uncontested Facts, numbers 34-43, and Defendants Exhibit 6.

[41] Under *Kremer*, state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law.  *Kremer*, 102 S.Ct at 1897-98. Plaintiff did not argue that any aspect of the state proceedings failed to meet this standard.

circumstances surrounding her dismissal demonstrated that she was discriminated against because of her race and sex; (2) the Commission considered all the evidence presented at the hearing related to these issues; and, (3) the Commission concluded that she was not terminated because of her race or sex.

Nor did the plaintiff contest that the Louisiana First Circuit Court of Appeal affirmed the Commission's dismissal of the plaintiff's sex and race discrimination claims because the plaintiff failed to prove she was treated differently from similarly situated employees. Plaintiff also did not dispute that the judgment of the state court is final, valid and between the same parties in this case.[42] Defendants Exhibits 5 and 6 and the pleadings establish beyond doubt that the claims of sex and race discrimination brought by the plaintiff in this case arise out of the same transaction/occurrences that were the subject matter of the judgment issued by the First Circuit Court of Appeal. Thus,

---

[42] The record shows that the plaintiff's appeal in state court was separate from that of another sanitarian who had an appeal which was consolidated with the plaintiff's appeal. The defendant in the state court and here is the same - the plaintiff's employer, the Louisiana Department of Health and Hospitals. The fact that Methvien is also named as a defendant in this case does not affect the identity of the parties. Suing Methvien in his official capacity is the equivalent of suing the employer, the State, and Methvien in his individual capacity is not a viable defendant under federal and state discrimination law. *See*, *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994); *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674 (5th Cir. 2001); *Pierce v. State, Office of Legislative Auditor*, 2007-0230 (La.App. 1 Cir. 2/8/08), 984 So.2d 61, 67-68.

the judgment of the state appellate court upholding the Commission's disposition of the plaintiff's race and sex discrimination claims precludes the same claims from being asserted in this action based on Title VII and state law.[43]

**Hostile Work Environment**

Defendants argued the plaintiff cannot prove that any alleged harassment was based on prohibited motives, i.e., sex, race or age, or that any alleged harassment affected a term, condition or privilege of employment. Review of the record establishes that this argument has merit.

Plaintiff generally alleged in her Petition and Amended Complaint that she was harassed and experienced harassment and harassing acts.[44] However, the alleged basis for the harassment is vague. It is not clear whether the plaintiff claims she was subjected to harassment/hostile work environment because of her age, race or gender. Assuming that the plaintiff claims that she was harassed based on all of these grounds, the plaintiff has

---

[43] Because the plaintiff's § 1981 claim must be dismissed as a matter of law, this claim is not included in the discussion of the issues related to *Rooker-Feldman* and res judicata.

[44] Plaintiff's Petition and Amended Complaint contained numerous allegations related to harassment, but no specific allegation that the alleged harassment was based on race, gender or age. Petition, ¶¶ 5, 7, 9, 11-13; Amended Complaint, ¶¶ 5, 8, 11, 13, 15. Paragraph 13 of the Petition and paragraph 15 of the Amended Complaint could be interpreted as alleging harassment based on race and gender.

failed to come forward with evidence sufficient to establish that the nature or frequency of the defendants' conduct was so severe or pervasive that it affected the terms, conditions, or privileges of her employment.  Plaintiff did not even cite the applicable law or oppose the defendants' summary judgment arguments for dismissal of her hostile work environment claims.  Therefore, the defendants are entitled to summary judgment as to these claims under Title VII and the LEDL.

### Age Discrimination & Retaliation Under Title VII, ADEA and LEDL

As to the plaintiff's claims of age discrimination and retaliation, the facts are largely undisputed, particularly those facts related to the defendants' legitimate, nondiscriminatory/ nonretaliatory reasons for the employment actions taken against her.  Plaintiff's age discrimination claim will be addressed first.

The summary judgment record establishes that Methvien was the East Baton Rouge Parish sanitarian manager and the plaintiff's supervisor at the time of the events underlying the plaintiff's claims.  In June 2001 there were six experienced sanitarians in the East Baton Rouge Parish office, and all of them were over 40 years of age.  From oldest to youngest the six employees were: Barrie Edgar, Bobbie J. Smith, Tom Mayhall, the plaintiff, Marliese Samuel

and Patricia DeRousselle.[45]   Plaintiff, as an experienced Sanitarian 3, was required to train lower level sanitarians.

On June 14, 2001, Methvien issued a written directive to the plaintiff and two other sanitarians, instructing them as follows:

> [T]his memo is a directive, that from this date forward, you will be responsible for utilizing your personal vehicle when training new sanitarian staff.  In addition, it may sometimes be necessary for you to allow other sanitarians to accompany you in your vehicle when conducting inspections of OPH business.  Failure to comply with this directive will be considered insubordination and may result in disciplinary action.[46]

This written directive was issued only to the plaintiff, Bobbie Smith and Patricia DeRousselle, who had objected to using their personal vehicles to transport sanitarian trainees.[47]   On August 10, 2001 a sanitarian staff meeting was held, sanitarians

---

[45] Plaintiff was 50 years of age at the time of her termination.

[46] Defendants Exhibit 9.

[47] See record document number 36-5, defendant's Statement of Uncontested Facts, number 16.  Plaintiff denied this statement of fact in her Statement of Disputed Material Facts, record document number 41-2.  Methvien testified at the plaintiff's Civil Service appeal hearing that the plaintiff, Smith and DeRousselle refused to receive the directive [b]ecause they were the only ones who would not comply with office procedures." Record document number 36-13, Exhibit 5, Hearing transcript p. 148, see also, pp. 157-59.  Even if there is dispute as to whether DeRousselle refused to comply with the driving requirement, Methvien believed she did not, and there is no dispute that the directive was issued to the plaintiff because she refused to comply with the driving requirement.  It is obvious that there was no need to issue a directive to sanitarians who complied with the driving requirement, and for that reason the plaintiff cannot legitimately contend that she is similarly situated to them.

were again instructed that they were to train newly hired sanitarians and that these trainees would be "expected" to accompany the senior sanitarians in their vehicles.[48]  On August 10 and 14, 2001, the plaintiff trained new sanitarians but did not transport them in her vehicle.  Consequently, the plaintiff was issued a letter of reprimand on August 21, 2001 for failing to follow the directive to use her personal vehicle for training on these dates.

In October 2001 the plaintiff met with two of her higher level supervisors, Jamie Roque and Ron Nettles, to discuss her issues with following Methvien's directive.  Both supervisors encouraged the plaintiff to comply with it.[49]  On March 8, 2002 the plaintiff trained Amy Nichols but refused to allow Nichols to ride in her vehicle.  As a result the plaintiff was suspended for 45 days.  Plaintiff's appeal of her suspension to the Civil Service Commission was denied.  On September 6, 2002 the plaintiff again refused to allow a sanitarian trainee to ride with her on an inspection.  After this refusal the plaintiff was terminated effective October 4, 2002.

---

[48] Record document number 36-10, defendants Exhibit 5, Hearing transcript, pp. 14-17.  Methvien explained that the term "expected" did not mean the requirement was flexible.

[49] Nettles supervised Methvien and held the position of parish manager for the East Baton Rouge Parish health unit.  Roque was over Nettles and held the position of regional administrator of the Office of Public Health.  Hearing transcript, pp. 24 and 36.

The record establishes that at all times the plaintiff admitted that she refused to drive other sanitarians in her personal vehicle.[50]  Plaintiff appealed her termination and it was upheld after a hearing before the Civil Service Commission.  The Commission's decision was affirmed by the Louisiana First Circuit Court of Appeal.

Plaintiff asserted, and the defendants did not dispute, that the plaintiff has evidence to satisfy the first three elements of her prima facie case of age discrimination.  Yet, the plaintiff failed to present any evidence to refute the legitimate, nondiscriminatory reasons for her discharge.  Instead, the plaintiff attempted to create a material factual dispute by arguing that Methvien's directive to use her personal vehicle for training was "null and void."[51]  Her attempt is unavailing.

Plaintiff relied on evidence that: (1) the Sanitarian 3 job description did not state that a Sanitarian 3 is required to use his personal vehicle to transport sanitarian trainees;[52]  (2) the Department of Health and Human Services never produced to plaintiff a written policy requiring sanitarians to transport sanitarian

---

[50] See, e.g., plaintiff's Statement of Disputed Material Facts, number 16.

[51] Record document number 41, opposition memorandum, pp. 6-12.

[52] Defendants Exhibit 8.

trainees;[53] (3) according to the Department's handbook, only the Secretary of the Department of Health and Human Services can change Department policy or procedure;[54] (4) on August 16, 1999 at a sanitarian staff meeting conducted by Methvien, the sanitarians were told that because travel questions had arisen they were not required to provide transportation for sanitarian trainees;[55] and, (5) Judge Pettigrew's opinion concurring in the judgment of the Louisiana First Circuit Court of Appeal[56] and the decision approving the plaintiff's request for unemployment benefits questioned the validity of Methvien's directive.[57]

None of this evidence contradicts the relevant facts which establish the defendants' nondiscriminatory reasons for terminating the plaintiff's employment, and none of this evidence creates a disputed factual issue as to the legitimacy of those reasons.

Plaintiff testified that she did not know if Methvien had the authority to give the directive, and testified, "I guess he was doing what his supervisors told him he could do."[58]  The record also

---

[53] Plaintiff Exhibit 1, Plaintiff depo., p. 144.

[54] Plaintiff Exhibit 2.

[55] Plaintiff Exhibit 3, Staff Meeting Minutes, August 16, 1999 (two pages).

[56] Defendants Exhibit 6.

[57] Plaintiff Exhibit 5.

[58] Plaintiff depo., p. 145.

establishes that Methvien's supervisors in the department were consulted about the directive, knew that Methvien was enforcing it and told the plaintiff to comply with it.[59]  Given this evidence, the fact that the transportation requirement was not included in the Sanitarian 3 job description, and that the Department could not produce a written policy on the plaintiff's request, does not support a reasonable inference that Methvien did not have the authority to issue the directive or was acting contrary to Department policy.[60]  More importantly, whether Methvien did or did not have the authority to impose the driving requirement and issue the directive to the plaintiff, her refusal to follow it is undisputed.  Absent a showing of prohibited discrimination, the plaintiff has not shown that Title VII, the ADEA or the LEDL provides any remedy in these circumstances.

Although it is not entirely clear, the plaintiff apparently contends that Methvien's instructions at the August 16, 1999 staff meeting that senior sanitarians were not required to provide transportation to sanitarian trainees established Department policy, and this policy could only be changed by the Secretary of the Department.  Such an argument would contradict the plaintiff's

[59] Hearing transcript, pp. 12-14, 19, 27-29, 98, 172-73.

[60] Statements in a concurring state court opinion, and the findings of the unemployment compensation tribunal applying its own legal standards, are clearly not facts which dispute the defendants' legitimate, nondiscriminatory reasons for the plaintiff's termination.

33

own argument that Methvien's June 14, 2001 directive to the plaintiff and his instructions to the sanitarian staff at the August 2001 staff meeting were null and void because he did not have policy-making authority.

Plaintiff relied heavily on the Civil Service hearing testimony of Martha Manual.[61]  It is unclear whether Manual's testimony referred to age or the fact that the plaintiff and others had been in the department for a long time.[62]  Because on summary judgment this evidence must be viewed in the plaintiff's favor, the court will infer that Methvien comment about which Manual testified referred to age.  Therefore, the only evidence the plaintiff has to support her age discrimination claim is that she was 50 years of age, qualified for her job, and the one age-related comment by Methvien.

This evidence is insufficient to create a genuine dispute for trial on the issue of age discrimination.  After *Gross*, the plaintiff can no longer defeat summary judgment by presenting only evidence sufficient to support an inference that age was a motivating factor in the defendant's adverse employment decisions.  Given that the plaintiff has no evidence to dispute the defendants'

---

[61] Manual was the facility manager/director of the East Baton Rouge Parish Health Unit.  Manual met with Methvien to discuss issues related to the plaintiff's complaints about using her personal car for training.  Hearing transcript, pp. 43-44.

[62] Hearing transcript, pp. 45, 53 and 56.

legitimate, nondiscriminatory reasons, the sum of the evidence is not sufficient for a reasonable jury to conclude that but for the plaintiff's age she would not have been terminated.

In summary, the plaintiff has failed to come forward with any evidence to dispute the defendants' legitimate, nondiscriminatory reasons for their employment actions.   Nor has the plaintiff presented any evidence that she was replaced by someone outside of the protected age discrimination class, i.e., someone less than 40 years of age, replaced by someone younger, or treated less favorably than similarly situated younger workers.[63]

Plaintiff's retaliation claims also lack evidentiary support. Plaintiff argued that she engaged in protected activity when she complained to the Inspector General in September 2002 about the discrimination and harassment she was experiencing, and less than a month later she was suspended and then terminated on October 4, 2002.   Plaintiff contended that this evidence of timing and the

---

[63] Plaintiff did not come forward with any evidence to dispute that the transportation policy she objected to applied to all the sanitarians under Methvien, or any evidence that younger individuals, similarly situated, i.e., in nearly identical circumstances to hers, were treated more favorably.   In disparate treatment cases, the plaintiff-employee must show nearly identical circumstances for employees to be considered similarly situated. *Berquist v. Washington Mut.* Bank, 500 F.3d 344, 353 (5th Cir. 2007); *Perez v. Texas Dept. of Criminal Justice*, 395 F.3d 206, 210 (5th Cir. 2004).

One of the three employees issued the same directive as the plaintiff was DeRousselle.   DeRousselle was the youngest person of the six experienced sanitarians in the department.   Record document number 38-2, defendants' Statement of Uncontested Facts, number 14.

evidence which she presented showing that Methvien's directive/instructions were null and void, is sufficient to create a genuine dispute for trial on her retaliation claims under Title VII, the ADEA and the LEDL.

Plaintiff correctly states that close timing can establish the causal link between protected activity and an adverse employment action. However, even assuming the plaintiff engaged in protected activity,[64] as explained above the plaintiff has no evidence to dispute the defendants' legitimate, nonretaliatory reasons for her suspension and termination. Based on the absence of evidence on this issue and the only evidence being close timing, a reasonable trier of fact could not conclude that but for the protected activity, the adverse employment actions would not have occurred.

**FMLA Retaliation**

Although the plaintiff alleged that she was abused and harassed for taking leave pursuant to the FMLA, she also alleged

---

[64] Plaintiff alleged in her Petition that in September 2002 she asked the Inspector General's office to investigate her employer's discriminatory and harassing acts, and complained to DHH Secretary David Hood about the discrimination, harassment, retaliation and hostile work environment to which she and other African American female employees were subjected. Petition, ¶¶ 12 and 13. It is not clear from these allegations whether the plaintiff complained about discrimination/harassment based on race, gender or age. For the purposes of this motion, the court assumes that the plaintiff held a reasonable belief that she was opposing employment practices that are unlawful under the federal and state employment laws at issue in this case.

that on July 22, 2002 she was granted her request and placed on intermittent FMLA leave.[65]   Plaintiff alleged further that two months later, while she was still on this intermittent FMLA leave, she was terminated.   Despite these allegations, the plaintiff's memorandum has no arguments opposing summary judgment as to her FMLA claim.

A review of the record demonstrates that summary judgment is appropriate as to this claim.   Plaintiff failed to come forward with any evidence to support her allegations that she was abused and harassed for taking FMLA leave.   This lack of evidence and the fact that the plaintiff's request for FMLA leave was granted, demonstrate that there is no evidence from which a reasonable jury could find that the defendants interfered with or denied the plaintiff's exercise of her FMLA rights.   To the extent the plaintiff claims some link between being on FMLA leave and being her terminated, she failed to come forward with any evidence that the defendants terminated her in retaliation for taking FMLA leave. Any evidence of close timing, i.e. termination two months after being granted intermittent FMLA leave, is clearly insufficient to create a genuine dispute for trial.   The absence of evidence on these essential elements entitles the defendants to summary judgment as to the plaintiff's FMLA claim.

---

[65] Record document number 19, Amended Complaint, ¶¶ 8 and 9.

**Denial of Training**

Plaintiff also alleged and argued that she was discriminated against with regard to training.  It is unclear on what basis the plaintiff is claiming that she was denied training – race, gender, age or retaliation.  Nevertheless, it is clear that the summary judgment record is void of any evidence to support a finding that the plaintiff was denied training because of disparate treatment based on motives prohibited under Title VII, the ADEA or the LEDL.

Defendants presented evidence to show that the plaintiff's supervisor training was delayed because of a staff shortage, and that the plaintiff was later approved for the training.  The evidence also showed that in 1999 through 2001, other training was provided for the entire sanitarian staff, and the plaintiff presented no evidence that she was excluded from any of this training.[66]  Plaintiff failed to come forward with any facts to contradict the defendants' evidence, or specific facts to show that individuals outside her protected class and similarly situated to her were given more favorable treatment with regard to training. Defendants are entitled to summary judgment as a matter of law as to any claim that the plaintiff was denied training on the basis of race, gender, age or retaliation.

---

[66] Defendants Exhibit 7; Plaintiff depo., pp. 124, 139.

38

**State Law Tort Claims**

Plaintiff argued that the defendants' summary judgment motion is moot as to the state law claims for intentional infliction of emotional distress and defamation.   In her response to the defendants' Motion to Dismiss and this motion, and when she filed her Amended Complaint, the plaintiff clarified that she is not asserting a claim for defamation or a separate tort claim for intentional infliction of emotional distress.[67]   Therefore, as to the state law tort claims of defamation and intentional infliction of emotional distress, the defendants' motion is moot.

**Conclusion**

There is no dispute at all - much less a genuine dispute - that the plaintiff's supervisor Charles Methvien required her and the other experienced, senior sanitarians to used their personal vehicles when training lower level sanitarians and that the plaintiff failed to comply with this requirement.   That the plaintiff disagreed with this transportation requirement is abundantly clear.   However, disputes over whether this was a wise or cost-effective requirement, whether the reasons for it were explained to the plaintiff's satisfaction, and whether Methvien

---

[67] Record document number 8, Memorandum in Opposition to Defendants' Motion to Dismiss, p. 19; record document number 19, Amended Complaint, ¶ 6; record document number 41, opposition memorandum, p. 28.

exceeded his authority by imposing this requirement, serve mainly to distract the court from the issues to be resolved.

To create a genuine dispute of material facts, and thereby avoid summary judgment on her claims of unlawful discrimination, harassment and retaliation, the plaintiff must offer more than a mere scintilla of evidence. Plaintiff's use of the words "harassment," "harassing" and "discriminatory" when describing her interactions with Methvien is not tied to any conduct based on her age, race or sex. Rather what the plaintiff actually refers to is Methvien's efforts to obtain the plaintiff's compliance with the transportation requirement. Merely labeling nondiscriminatory job requirements and actions as "harassment," "harassing" and "discriminatory" does not transform them into evidence of unlawful discrimination or retaliation.

Defendants have shown that the undisputed material facts and the applicable law entitle them to summary judgment.

Accordingly, the Motion for Summary Judgement filed by defendants the State of Louisiana, Department of Health and Hospitals and Charles Methvien is granted.

Baton Rouge, Louisiana, July 31, 2009.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE